UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MONA BAYGAN,<br><br>    Plaintiff,<br><br>    v.<br><br>ANTONY J. BLINKEN, Secretary of State, U.S. Department of State; and JEFFRY LANE FLAKE, U.S. Ambassador to Turkey,<br><br>    Defendants. | Civil Action No. 23-2840 (JDB) |

**MEMORANDUM OPINION & ORDER**

Plaintiff Mona Baygan brings suit under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 706(1), alleging that the U.S. Secretary of State and the U.S. Ambassador to Turkey (collectively, the "State Department") unreasonably delayed the adjudication of her I-130 visa application. Before the Court is the State Department's motion to dismiss and Baygan's motion to strike the State Department's motion. For the following reasons, the Court will deny Baygan's motion to strike and grant the State Department's motion to dismiss.

**Background**

The following facts are drawn from the complaint and matters of which the Court may take judicial notice. See Gun Owners of Am., Inc. v. FBI, 594 F. Supp. 3d 37, 42 (D.D.C. 2022).

Mona Baygan is a non-citizen, Iranian national currently residing in Turkey awaiting processing of her immigrant visa application. Compl. for Declaratory Relief to Compel Admin. Action [ECF No. 1] ("Compl.") ¶¶ 1, 7, 32. Along with her two daughters, Baygan unlawfully entered the United States via the U.S.-Mexico border in March 2009. Id. ¶ 9. In November 2009, Baygan filed an I-589, Application for Asylum and Withholding of Removal, with the U.S.

1

Citizenship and Immigration Services ("USCIS"), seeking asylum on the grounds that she faced persecution—and potentially death—in Iran based on her conversion from Islam to another religion.  Id. ¶ 10.  That December, USCIS began removal proceedings against Baygan and her daughters.  Id. ¶ 11.  Just under a year later, Baygan married Hamed Shabani Fard, who was then a lawful, permanent U.S. resident.  Id. ¶ 12.  In February 2015, following his naturalization, Fard filed I-130s, Petitions for Alien Relative, with USCIS seeking immigrant visas for Baygan and her daughters.  Id. ¶¶ 13–14.  After being approved by USCIS and transferred to the National Visa Center, the I-130 petitions were assigned for processing at the U.S. Embassy in Ankara, Turkey—the site of the required in-person immigrant visa interview.  Id. ¶¶ 15, 18.  This interview was scheduled for January 2023.  Id. ¶ 18.  Prior to leaving the United States for the interview, Baygan and her daughters filed I-601A forms seeking to waive the statutory 10-year bar on reentry, which had been triggered by the accrual of over a year of unlawful presence in the United States.  Id. ¶ 17; see 8 U.S.C. § 1182(a)(9)(B)(i), (v).  In February 2017, USCIS approved Baygan's and her daughters' I-601A forms.  Compl. ¶ 17.  The presiding judge in the removal proceedings granted Baygan and her daughters voluntary departure under 8 U.S.C. § 1229c(a).  Compl. ¶ 19.

On January 26, 2023, Baygan and her daughters appeared at the U.S. Embassy in Ankara for the interview.  Id. ¶ 21.  At the conclusion of the interview, their visa applications were "temporarily refused under section 221(g) of the U.S. Immigration and Nationality Act" for "Administrative Processing."  Id.  After Baygan provided additional, requested forms and documentation, the Embassy approved both of her daughters' visa applications in April 2023, enabling her daughters to return to the United States.  Id. ¶ 27.  However, Baygan's own application remained in administrative processing.  Id.  Unable to return to the United States or gain work authorization in Turkey, Baygan experienced isolation in an unfamiliar country, financial strain

2

resulting from her family now supporting two households, and emotional turmoil.  Id. ¶ 32.  Baygan alleges that she has begun "rationing her meals" and "wakes up in the middle of the night crippled with anxiety and unable to breath[e]."  Id.

Baygan filed the present suit against the U.S. Secretary of State and U.S. Ambassador to Turkey (in their official capacities) in September 2023—nine months after her interview at the Embassy.  Id. ¶ 32.  Baygan contends that the State Department's delay in processing her visa application is unlawful under sections 702 and 706(1) of the APA.  See id. ¶ 37.  She argues that the allegedly unlawful delay in adjudicating her application has caused and continues to cause severe harm.  Id. ¶ 42.  She seeks injunctive relief in the form of a court order compelling the State Department to adjudicate her visa application within fourteen days of the order.  Id. ¶ 37.

The State Department moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  See Mot. to Dismiss & Mem. in Supp. Thereof [ECF No. 9] ("Mot.").  Baygan filed a response and a cross-motion seeking to strike the State Department's motion as untimely pursuant to Federal Rule of Civil Procedure 12(a)(2) and as violative of Local Civil Rule 7(n).  See Pl.'s Opp'n to Mot. & Cross-Mot. to Strike Mot. [ECF No. 10–11] ("Opp'n").  The State Department filed a reply opposing the cross-motion and supporting dismissal.  See Reply in Further Supp. of Mot. & Opp'n to Pl.'s Mot. to Strike [ECF No. 15] ("Reply").  The State Department subsequently filed a notice of supplemental authority, to which Baygan responded.  First Notice of Suppl. Auth. [ECF No. 16]; Pl.'s Resp. to Defs.' Notice of Suppl. Auth. [ECF No. 17].  Pursuant to this Court's order, the parties also filed supplemental responses relating to the timeliness of the State Department's motion.  See July 15, 2024 Order [ECF No. 18]; Resp. to Court Order [ECF No. 20] ("Timeliness Resp."); Pl.'s Resp. to Defs.' Resp. to Court Order [ECF

No. 21]. The State Department then filed another notice of supplemental authority. Second Notice of Suppl. Auth. [ECF No. 22]. The motions are now fully briefed and ripe for decision.

## Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). At the motion to dismiss stage, courts must "accept the [complaint's] factual allegations as true and draw all reasonable inferences in the plaintiff's favor," Sanchez v. Off. Of State Superintendent of Educ., 45 F.4th 388, 395 (D.C. Cir. 2022), but need not credit "legal conclusions couched as factual allegations," Nurriddin v. Bolden, 818 F.3d 751, 756 (D.C. Cir. 2016) (per curiam).

Courts also apply the 12(b)(6) standard when assessing a facial (rather than factual) challenge to a complaint's jurisdictional allegations under Rule 12(b)(1). See Simon v. Republic of Hungary, 77 F.4th 1077, 1116 (D.C. Cir. 2023).

## Analysis

**I. Plaintiff's Motion to Strike**

Baygan moves to strike the State Department's motion to dismiss on two grounds. First, Baygan contends that the State Department violated Federal Rule of Civil Procedure 12(a)(2) by filing its motion to dismiss one day late. Opp'n at 45. The State Department responds that its motion was timely because Baygan's return of service affidavit reflects service on a "central Justice Department mail facility" rather than the U.S. Attorney's Office's civil process clerks (the legally relevant entity), who did not receive and process Baygan's service package until the following day. Timeliness Resp. at 4. In the alternative, the State Department moves for a one-

4

day extension of time.  Id. at 4 n.1.  The Court need not address the parties' technical dispute over Justice Department mail-processing practices.  Even assuming that Baygan is correct, the State Department's reliance on what it understood to be the correct service date, see id. at 1–3 (collecting authorities), was excusable neglect.  Hence, the Court exercises its discretion to grant the State Department's post hoc motion for a one-day extension of time.  See Fed. R. Civ. P. 6(b)(1)(B).

Baygan also argues that the State Department's motion should be struck for failure to comply with Local Civil Rule 7(n)(1).  Opp'n at 46.  Rule 7(n)(1) provides that in "cases involving the judicial review of administrative agency actions . . . the agency must file a certified list of the contents of the administrative record . . . simultaneously with the filing of a dispositive motion."  LCvR 7(n).  The State Department disputes Rule 7(n)'s applicability to this case, arguing that the Rule does not apply because Baygan challenges agency inaction rather than agency action.  See Mot. at 33 n.3.  The Court has previously expressed skepticism regarding this line of reasoning, see Tahavori v. Blinken, Civ. A. No. 23-1460 (JDB), 2024 WL 1328546, at *2 (D.D.C. Mar. 28, 2024), and again declines to adopt the State Department's categorical position.  However, the Court will waive compliance with Rule 7(n) because "the administrative record is not necessary for the Court's decision regarding the motion to dismiss."  Id. (cleaned up); see also Bromfman v. U.S. Citizenship & Immigr. Servs., Civ. A. No. 21-571 (BAH), 2021 WL 5014436, at *3 n.2 (D.D.C. Oct. 28, 2021).

## II.  State Department's Motion to Dismiss

The State Department advances five arguments in support of its motion to dismiss: (1) Baygan improperly named the Secretary of State as a party, (2) Baygan lacks standing to challenge the alleged delay because she has not suffered a legally cognizable injury and a court order will not redress any alleged injury, (3) the consular nonreviewability doctrine precludes judicial review,

(4) the law does not require a consular officer to take any discrete agency action, and (5) Baygan fails to plausibly claim an unreasonable delay as a matter of law.  See Mot. at 5–33.  The Court will address each argument in turn.

### A. Propriety of Naming Secretary Blinken as a Party

The State Department argues that this Court should dismiss Secretary of State Antony Blinken from the suit as an improperly named party.  Mot. at 5.  Its argument rests on language from Baan Rao Thai Restaurant v. Pompeo, 985 F.3d 1020 (D.C. Cir. 2021), where the D.C. Circuit reasoned that the Immigration and Nationality Act "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'"  Id. at 1024 (quoting Saavedra Bruno v. Albright, 197 F.3d 1153, 1156 (D.C. Cir. 1999)).  Based on this language, the State Department argues that the embassy in question has exclusive authority over decisions regarding Baygan's visa application.  Mot. at 5.  Because the Secretary of State cannot infringe on this exclusive authority to adjudicate Baygan's application, the State Department seeks dismissal of Secretary Blinken from the suit.  Mot. at 6.

However, as this Court has previously concluded, control over visa determinations is distinguishable from control over the timing of visa determinations.  See Tahavori, 2024 WL 1328546, at *6.  Nothing in Baan Rao precludes senior State Department officials from directing consular officers to adjudicate applications "within a reasonable time."  Id. (quoting 5 U.S.C. § 555(b)); see also, e.g., Lee v. Blinken, Civ. A. No. 23-1783 (DLF), 2024 WL 639635, at *3 (D.D.C. Feb. 15, 2024); Khazaei v. Blinken, Civ. A. No. 23-1419 (JEB), 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023).  Hence, the Court will not dismiss Secretary Blinken as a party.

### B. Standing

The State Department also contends that Baygan lacks standing to bring this suit. To establish constitutional standing, a plaintiff must demonstrate that she suffered an injury in fact, that the injury is traceable to actions by the defendant, and that there is a likelihood that a favorable judicial decision will redress the injury. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). The State Department argues that Baygan's allegations fall short of satisfying both the injury in fact and redressability requirements.

As to the injury in fact requirement, the State Department argues that (1) the delay alone is insufficient to establish injury in fact and (2) the alleged substantive injury—inability to travel to the United States—is not "protected by the common law, a statute, or the Constitution." Mot. at 7. The State Department reasons, under Trump v. Hawaii, 138 S. Ct. 2392 (2018), that a nonresident has no constitutional right to enter the United States and, therefore, that any injury flowing from Baygan's inability to enter the United States does not qualify as a legally cognizable injury. See Mot. at 7–8.

The Court concludes that Baygan has sufficiently pleaded an injury in fact. To start, Congress explicitly recognized a "right to reasonably expeditious agency action when it passed the APA." Khan v. Blome, Civ. A. No. 22-2422 (JEB), 2022 WL 17262219, at *3 (D.D.C. Nov. 29, 2022). While the State Department is correct that a procedural injury untethered to a concrete interest does not qualify as an injury in fact, WildEarth Guardians v. Jewell, 738 F.3d 298, 316 (D.C. Cir. 2013), Baygan plausibly alleges injuries to concrete interests. She alleges that the delay in visa adjudication has resulted in monetary harm in the form of her family supporting two households: one in the United States and one in Turkey. Compl. ¶ 32. Such monetary harms "readily qualify as concrete injuries under Article III." TransUnion LLC v. Ramirez, 141 S. Ct.

2190, 2204 (2021). Baygan also alleges that the separation from her family has resulted in anxiety, stress, and exhaustion. Compl. ¶ 32. "[A] person's interest in being united with [her] relatives is sufficiently concrete and particularized to form the basis of an Article III injury in fact." Trump v. Hawaii, 138 S. Ct. at 2416; see Pourabdollah v. Blinken, Civ. A. No. 23-1603 (DLF), 2024 WL 474523, at *3 & n.4 (D.D.C. Feb. 7, 2024) (applying Hawaii's logic to noncitizens). Hence, the Court concludes that Baygan's allegations make out an injury in fact for standing purposes. See, e.g., Khoshrou v. Blinken, Civ. A. No. 22-2859 (CKK), 2023 WL 4930086, at *3 (D.D.C. Aug. 2, 2023); Al-Gharawy v. U.S. Dep't of Homeland Sec., 617 F. Supp. 3d 1, 5 (D.D.C. 2022); Rai v. Biden, 567 F. Supp. 3d 180, 190 (D.D.C. 2021).

Turning to redressability, the State Department argues that the § 221(g) temporary refusal of Baygan's visa application for further processing is a final decision. Mot. at 13. The State Department reasons that, because Baygan does not ask the Court to compel the State Department to grant her a visa, there is no likelihood a court order instructing the State Department to re-adjudicate her visa will result in any different outcome. Id. at 13–14. However, as discussed below, the Court disagrees with the State Department's characterization of the § 221(g) refusal of Baygan's application for further administrative processing as a final decision. An order instructing the State Department to timely adjudicate Baygan's visa application would thus redress the alleged injury—hardship stemming from the delay in administrative processing. See Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to U.S. v. Kerry, 168 F. Supp. 3d 268, 282 (D.D.C. 2016).

Hence, the Court concludes that Baygan has standing to challenge the alleged delay in the adjudication of her visa application.

### C. Consular Nonreviewability

The State Department next raises a familiar argument: the consular nonreviewability doctrine. At the outset, this Court, like other judges in this District, concludes that the § 221(g) refusal for further administrative processing is not a final decision. See, e.g., Tahavori, 2024 WL 1328546, at *3–4. At the conclusion of the visa application interview, the consular officer temporarily refused the visa application for administrative processing. Compl. ¶ 21. The embassy requested further documents; upon receipt, the embassy stated it would "continue processing [Baygan's] case accordingly and inform [her] once a decision [had been] made." Id. ¶ 26. While the status of her immigrant visa application showed "Refused," further contact with the embassy confirmed Baygan's application remained pending for administrative processing. Id. ¶¶ 28, 31. These allegations, taken as true at the pleading stage, run counter to the State Department's characterization of the § 221(g) refusal as a final decision. The Court thus concludes that refusal of an application for administrative processing is a temporary, interim status and that the consular nonreviewability doctrine does not apply under the final-decision grounds raised by the State Department.

The Court also declines to read Baan Rao in the manner proposed by the State Department. The State Department notes Baan Rao's holding that "[c]onsular nonreviewability shields a consular officer's decision to issue or withhold a visa from judicial review." 985 F.3d at 1024; see Mot. at 14. The State Department argues that, even if the § 221(g) refusal for further administrative processing is not a final decision, consular nonreviewability still applies because the consular officer decided to withhold a visa. Mot. at 14–16. The Court is not persuaded. Baan Rao says nothing about the judicial reviewability of visa processing delay occurring before an officer has made a final decision. See Meyou v. U.S. Dep't of State, Civ. A. No. 21-2806 (JDB), 2022 WL

9

1556344, at *2 (D.D.C. May 17, 2022). The consular nonreviewability doctrine does not bar judicial review of claims related to unreasonable delay in association with visa processing. See, e.g., Al-Gharawy, 617 F. Supp. 3d at 12 (explaining that the constitutional and statutory rationales underpinning the consular nonreviewability doctrine are distinct from the procedural considerations implicated by a delay in processing). The State Department's reading of Baan Rao does not compel the Court to deviate from the weight of precedent in this District.

Nor does the State Department's invocation of Goodluck v. Biden, 104 F.4th 920 (D.C. Cir. 2024), and Department of State v. Muñoz, 144 S. Ct. 1812 (2024), convince the Court to deviate from this District's case law. See First Notice of Suppl. Auth. at 1. In Goodluck, the defendants did not argue the consular nonreviewability doctrine before the D.C. Circuit and therefore the court "d[id] not consider that question." 104 F.4th at 926 n.3. And, while the Supreme Court in Muñoz reiterated the consular nonreviewability doctrine as applied to final decisions made by consular officers, it said nothing about whether courts are precluded from reviewing the delay related to processing visa applications. See 144 S. Ct. at 1819–21; see also Janay v. Blinken, Civ. A. No. 23-3737 (RDM), 2024 WL 3432379, at *8 (D.D.C. July 16, 2024). Hence, the Court concludes that the consular nonreviewability doctrine does not preclude the Court from considering Baygan's claims.

### D.  Required Discrete Agency Action

Because Baygan asserts an unreasonable delay claim under 5 U.S.C. § 706(1), the claim can only proceed if she demonstrates that the "agency failed to take a discrete agency action that it is required to take." Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004). The State Department asserts that Baygan's claim fails because she does not "identify a clear, non-discretionary duty requiring a consular officer to adjudicate, let alone re-adjudicate, any specific

visa application." Mot. at 18. Because this Court ultimately holds that Baygan fails to allege an unreasonable delay as a matter of law, the Court will assume, without deciding, that the State Department has a non-discretionary, discrete duty to adjudicate Baygan's visa application. See Rostamnia v. Blinken, Civ. A. No. 23-1638 (RDM), 2024 WL 1328462, at *5 (D.D.C. Mar. 28, 2024) (taking similar approach).[1]

### E. Reasonableness of Delay

Finally, the State Department argues that Baygan's claim fails because the delay in this case does not constitute an unreasonable delay as a matter of law. Mot. at 25. The central question in unreasonable-delay cases is "whether the agency's delay is so egregious as to warrant mandamus." Telecomms. Rsch. & Action Ctr. v. FCC ("TRAC"), 750 F.2d 70, 79 (D.C. Cir. 1984). This inquiry is guided by the six non-exclusive TRAC factors:

(1) the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

---

[1] The D.C. Circuit's recent, unpublished decision in Karimova v. Abate, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam), casts some doubt on whether consular officers are indeed subject to a discrete, mandatory duty to timely complete administrative processing after a visa application has already been "refused." The Karimova court reasoned that 5 U.S.C. § 555(b), plaintiff Karimova's proffered source of such a duty, was too general and indistinct to support a claim for mandamus or for agency inaction under the APA. Id. at *3–4. This conclusion was reinforced by consular officers' broad discretion and the "background principle of judicial abstinence" in relation to consular visa decisions. Id. at *6; see id. at *4–6. And the court emphasized the prior "refusal" of Karimova's application and reasoned that "[n]othing in federal law speaks to the ability" of consular officers to engage in further administrative processing "in case circumstances later change in [an] applicant's favor." Id. at *4.

Aspects of this Court's reasoning regarding the State Department's threshold arguments are in some tension with Karimova. To be sure, the Karimova court confined its holding to § 555(b), whereas Baygan relies on 8 U.S.C. § 1202(b) as the source of the State Department's alleged duty. And, as an unpublished decision, Karimova is not strictly binding. See D.C. Cir. R. 36(e)(2). But Karimova's logic may well have broader implications for visa mandamus cases in this District.

The Court will leave exploration of those implications for another day. Because Baygan fails to plausibly allege unreasonable delay as a matter of law, the Court will grant the State Department's motion to dismiss on that basis and need not consider whether Karimova independently requires dismissal.

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

TRAC, 750 F.2d at 80 (cleaned up).

Baygan urges the Court to refrain from engaging in the TRAC-factor analysis at this stage in the litigation, arguing that it would be "premature at this early stage in the proceedings prior to [the parties] . . . realiz[ing] the benefits of discovery." Opp'n at 36. However, "there is no categorical prohibition on deciding unreasonable-delay claims at the motion-to-dismiss stage, so the question of whether discovery is necessary depends, as with any sort of claim, on the particular [c]omplaint." Da Costa v. Immigr. Inv. Program Off., 643 F. Supp. 3d 1, 12 (D.D.C. 2022), aff'd, 80 F.4th 330 (D.C. Cir. 2023). The Court concludes the complaint and materials properly considered contain sufficient facts to proceed and evaluate the TRAC factors. Id.; see also Lee, 2024 WL 639635, at *4; Sarlak v. Pompeo, Civ. A. No. 20-35 (BAH), 2020 WL 3082018, at *5 (D.D.C. June 10, 2020).

In a typical TRAC-factor analysis, the first and fourth factors are the most important. See Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 340 (D.C. Cir. 2023). And the first factor is often considered in conjunction with the second factor. See Meyou, 2022 WL 1556344, at *3.

Combined, the first and second factors ask whether a rule of reason governs the agency response time and whether Congress, by statute, indicated an expected timetable for the response time. See id. To evaluate the first factor, the D.C. Circuit has instructed courts to "evaluate the length of the delay in light of 'the complexity of the task at hand, the significance (and permanence)

12

of the outcome, and the resources available to the agency.'" Da Costa, 80 F.4th at 340 (quoting Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1102 (D.C. Cir. 2003)). This factor favors the State Department because "processing visas takes a baseline amount of time." Khazaei, 2023 WL 6065095, at *6. While there is no bright-line rule, "[d]istrict courts have generally found that immigration delays in excess of five, six, [or] seven years are unreasonable, while those between three to five years are often not unreasonable." Id.; accord Meyou, 2022 WL 1556344, at *3. Indeed, "[c]ourts in this District consistently have held that two or three years does not constitute an unreasonable delay." Tekle v. Blinken, Civ. A. No. 21-1655 (APM), 2022 WL 1288437, at *3 (D.D.C. Apr. 29, 2022) (collecting cases). The alleged delay in this case—nine months at the time of filing and nineteen months as of August 2024—falls well within the range of wait times that courts have concluded constitute reasonable delay.

Baygan contends that a rule of reason's existence "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful." Opp'n at 33 (quoting Mashpee Wampanoag Tribal Council, 336 F.3d at 1102). She points out that the State Department has not provided the Court with detailed information on its processing procedures. Id. at 32–33. And she maintains that any assumption that the State Department processes supplemental document submissions on a "first-in, first-out basis," see, e.g., Asim v. Blinken, Civ. A. No. 24-638 (JEB), 2024 WL 3338778, at *3 (D.D.C. July 8, 2024), is defeated by the fact that her daughters' applications were processed within roughly three months while she is still waiting, see Opp'n at 35. These arguments are not without some force. But "Congress has given the agencies wide discretion in the area of immigration processing" and, in the absence of a statutory timetable, judges in this District routinely look "to case law as a guide." Tekle, 2022 WL 1288437, at *3 (first quoting Skalka v. Kelly, 246 F. Supp. 3d 147, 153–54

(D.D.C. 2017); and then quoting Sarlak, 2020 WL 3082018, at *6). The Court will follow that well-established approach here, and thus concludes that the first factor favors the State Department.

To evaluate the second factor, courts look to whether "Congress set a deadline for agency action." Da Costa, 80 F.4th at 344. To reiterate, "Congress [has] not provide[d] a statutory deadline to complete processing or adjudication of visa applications." Meyou, 2022 WL 1556344, at *3 (quoting Tekle, 2022 WL 1288437, at *3). However, lawmakers expressed, in a 2000 bill amending the Immigration and Nationality Act, "the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." Immigration Services and Infrastructure Improvements Act of 2000, Pub. L. No. 106-313, Title II, § 202, Oct. 17, 2000, 114 Stat. 1262, 1262 (codified at 8 U.S.C. § 1571(b)). The D.C. Circuit has concluded that this "aspirational statement . . . somewhat favors" plaintiffs who have waited longer than 180 days for an immigration benefit. Da Costa, 80 F.4th at 344. But this hortatory language does not fundamentally alter the calculus that visa application processing takes time. See id. at 340–44.

Baygan's primary argument on this point relates not to any visa processing–specific deadline but rather to the I-601A provisional waiver she received before departing the country. See Opp'n at 28–32. This waiver permits individuals who would normally be barred from reentry for either three or ten years (depending on the length of their unlawful presence) to depart the country and still be able to return. See 8 U.S.C. § 1182(a)(9)(B)(i), (v). The waiver is contingent on a finding that refusal of readmission "would result in extreme hardship to the citizen or lawfully resident spouse or parent of such alien." Id. § 1182(a)(9)(B)(v). Baygan argues that these waiver provisions—while not explicitly related to visa processing—evince a congressional intention that

14

individuals in her situation not be made to wait three years before reentry. Opp'n at 41. While perhaps true in a broad sense, these provisions' waiver of a statutory time bar on reentry is not the same as an affirmative admonition to speed up visa processing. And Baygan was subject to the ten-year rather than three-year bar, Compl. ¶ 16, so even under her logic it is not clear how these provisions could mandate a sub-three-year processing period. Finally, whatever persuasive force these waiver provisions have is somewhat less than the more directly applicable 180-day congressional statement discussed above—which the D.C. Circuit has concluded does not fundamentally change the analysis.

The fourth factor favors the State Department's position. To evaluate the fourth factor, courts must assess the impact of an order expediting agency action on competing agency priorities. See Da Costa, 80 F.4th at 343. Moving one application ahead of other applications does not achieve a net gain. See id. Instead, "ordering an agency to expedite the review of a particular visa application results in line-jumping and ultimately delays the final adjudication of the applications that were skipped." Meyou, 2022 WL 1556344, at *4. While the Court recognizes that the State Department has not provided detailed information on the backlog of immigrant visa applications, see Opp'n at 43, it concludes that granting relief to Baygan on an individual basis will necessarily result in the line-jumping concerns that courts have found tip factor four in favor of dismissal. See Da Costa, 80 F.4th at 344; see also Murway v. Blinken, Civ. A. No. 21-1618 (RJL), 2022 WL 493082, at *4 (D.D.C. Feb. 16, 2022) ("[G]ranting plaintiffs' request to expedite would necessarily mean additional delays for other applicants." (cleaned up)).

The third and fifth factors weigh in favor of Baygan. Both of these factors involve the harm Baygan suffered as a result of the delay in processing her visa application. See Tahavori, 2024 WL 1328546, at *5. The State Department asserts that these factors weigh in its favor

because an order compelling adjudication "will simply benefit a certain noncitizen to the detriment of others who may have experienced the same or worse impacts from a delay." Mot. at 32. However, courts evaluate the third and fifth factors in relation to the individualized harm suffered by the plaintiff in question. See, e.g., Ghadami v. U.S. Dep't of Homeland Sec., Civ. A. No. 19-00397 (ABJ), 2020 WL 1308376, at *9 (D.D.C. Mar. 19, 2020). And Baygan has plausibly alleged such harm—harm that represents the toll imposed on health and wellbeing by lengthy delays in the immigration process. Because she has no ties to Turkey and no work authorization, Baygan alleges that she has suffered both physically and emotionally. See Compl. ¶ 32. Moreover, she claims that she has suffered financially because her husband in the United States must provide funding for two households in two separate countries. Id. Hence, the Court concludes that the third and fifth factors favor Baygan. See, e.g., Arab v. Blinken, 600 F. Supp. 3d 59, 71 (D.D.C. 2022) ("[T]he prolonged and indefinite separation of spouses may place health and welfare at stake." (internal quotation marks omitted)).

The sixth factor relates to agency impropriety and instructs courts that they need not find bad faith on the part of the agency to determine unreasonable delay exists. See Tahavori, 2024 WL 1328546, at *6. Baygan argues that the State Department's refusal to provide information on the status of the visa application or an expected timeline for completion demonstrates bad faith. Opp'n at 42. In response, the State Department maintains it is not acting in bad faith and the delay is a result of national security implications in connection with visa application decisions. Reply at 18. Ultimately, the Court concludes that this factor is neutral. See Meyou, 2022 WL 1556344, at *5.

Considering these factors together and acknowledging the importance of the first and fourth factors, the Court concludes that Baygan has failed to plausibly state a claim for

16

unreasonable delay based on the adjudication of her visa application at this time. The most important factors weigh in favor of dismissal and, while the third and fifth factors favor Baygan, they do not overcome the weight of other factors supporting dismissal. Id. Therefore, the Court will grant the State Department's motion and dismiss Baygan's suit without prejudice.

## Conclusion

For the foregoing reasons, and upon consideration of the entire record herein, it is hereby

**ORDERED** that [11] plaintiff's motion to strike is **DENIED**; it is further

**ORDERED** that [9] defendants' motion to dismiss is **GRANTED**; and it is further

**ORDERED** that plaintiff's case is **DISMISSED**.

**SO ORDERED**.

/s/
JOHN D. BATES
United States District Judge

Dated: August 8, 2024